UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

GREGORY J. MARTUCCI,                    :

                                        :

    Plaintiff                          :        CIVIL ACTION NO. 3:17-1671

                                        :

    v.                                 :        (JUDGE MANNION) FILED

                                        :                          SCRANTON

MILFORD BOROUGH, et al.,                :

                                        :                          APR 0 5 2018

    Defendants                         :

## M E M O R A N D U M

Plaintiff Gregory J. Martucci was a patron at a local Inn when another patron, who was intoxicated, became abusive toward female patrons. Plaintiff and other men removed the unruly patron from the Inn. The patron who was removed claimed that plaintiff and the other men assaulted him. Plaintiff and the men were arrested by the police and charged with several crimes. Subsequently, the criminal charges against plaintiff were dismissed. Plaintiff then initiated this civil rights action, pursuant to 42 U.S.C. §1983 and 28 U.S.C. §1331, suing the Milford Borough and the police chief as well as the patron who alleged he was assaulted. The Borough and the police chief have moved to dismiss two Counts of plaintiff's amended complaint against them for malicious prosecution as well as his request for declaratory relief. The police chief also claims that he is entitled to qualified immunity. For the reasons that follow, the motion to dismiss will be **GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND[1]

On February 14, 2015 and the early morning hours of February 15, 2015, plaintiff was a patron at the Dimmick Inn in Milford, PA. Plaintiff saw another patron, defendant Omar Ashmawy, become verbally abusive towards the wife of the Inn's owner and a female bartender at the Inn. Plaintiff then saw Ashmawy, who appeared to be visibly intoxicated, physically assault the owner's wife and her female friend. Plaintiff along with the Inn's owner, John Jorgenson, and another person then pulled Ashmawy away from the two women. At this point, Kelly Paddock, Ashmawy's girlfriend, exited the restroom and began to kick and punch Tim Riley and other patrons in the Inn. Ashmawy was extremely violent and belligerent at the time. Plaintiff then pulled Ashmawy away from owner's wife and her female friend and took him outside of the Inn. At no point during this incident did plaintiff punch or strike Ashmawy. Nor did Plaintiff engage in any criminal or tortious behavior towards Ashmawy. At all times, plaintiff acted in the justified defense of the owner's wife and her female friend as well as other patrons in the Inn.

While they were outside, Ashmawy began to engage in a physical dispute with Paddock, who was also visibly intoxicated. Ashmawy then yelled,

---

[1]All facts are taken from plaintiff's amended complaint, (Doc. 14), unless otherwise noted. The facts alleged in plaintiff's amended complaint must be accepted as true in considering the defendants' motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

"you'll be sorry!", directed at plaintiff and the others who assisted plaintiff in subduing Ashmawy. Police officers from the Milford Police Department ("MPD") then arrived on the scene and, they put Ashmawy and Paddock in a patrol car and removed them from the scene.

Soon thereafter, defendant MPD Chief Joaquim DaSilva began investigating the incident at the Inn. Plaintiff alleges that the personal investigation of an incident by DaSilva was contrary to accepted MPD practice or procedure. Jorgenson and his wife gave statements to the police and photos of bruising caused by Ashmawy on the wife's arm. Nonetheless, the photos were not maintained in the case file by DaSilva, contrary to accepted MPD practice and procedure. DaSilva then directed that no criminal charges be filed against Ashmawy due to Ashmawy's political position in Washington, DC as Staff Director and Chief Counsel of the Office of Congressional Ethics.

Subsequently, Ashmawy falsely claimed that he had been assaulted by plaintiff, Jorgenson and Riley. On March 17, 2015, DaSilva informed plaintiff that Ashmawy had made complaints to MPD and the Pike County District Attorney and alleged that plaintiff and the other men assaulted him during the incident at the Inn and caused him physical injuries. However, DaSilva indicated to plaintiff that the allegations were baseless and, that they would not be proceeding any further.

Plaintiff alleges that Ashmawy continued to complain to the MPD and the Pike County District Attorney's Office falsely claiming that he was

3

assaulted by plaintiff and the other men and suffered injuries and, that Ashmawy "threaten[ed] to use his position as Staff Director and Chief Counsel of the Office of Congressional Ethics to induce a criminal proceeding to be brought against Plaintiff and [the] others." Plaintiff also alleges that Ashmawy wrote a letter to the District Attorney's Office "using his congressional office address and threatening federal investigation/inquiry into the conduct of the [MPD] and/or the Pike County District Attorney's Office." Further, Ashmawy signed an Affidavit of Probable Cause in which plaintiff alleges that "he falsely claimed that Plaintiff and one to two other men assaulted him, choked him, threw him to the ground, and kicked him" causing him to lose sight in one eye and suffer fractures. As such, plaintiff avers that Ashmawy threatened to use the power of his office as a federal government official to coerce the MPD and the District Attorney to initiate criminal proceedings against him.

Thus, despite his representations to plaintiff that no charges would be filed and, based on Ashmawy's continued threats and demands that charges be filed, DaSilva informed other individuals that he was filing felony charges against plaintiff because Ashmawy was a "DC big shot." On April 28, 2015, DaSilva signed an Affidavit of Probable Cause for an arrest warrant, but the arrest warrant did not positively identify plaintiff. Plaintiff alleges that DaSilva knew that Ashmawy's allegations were false but nonetheless relied upon them to support the filing of criminal charges, including felony aggravated assault. Plaintiff avers that DaSilva also knew that other allegations in his Affidavit of

4

Probable Cause were false. Plaintiff also alleges that DaSilva ignored evidence showing that he did not assault Ashmawy, including the facts that none of the other individuals interviewed by police regarding the incident specifically identified him as having assaulted Ashmawy and that several witnesses corroborated his version of the incident. Regardless, "DaSilva either personally issued the criminal charges against Plaintiff and/or personally ordered that criminal charges be instituted, with the knowledge that they were without merit." Thus, based on Ashmawy's false allegations and DaSilva's statements contained in his Affidavit of Probable Cause, which he knew to be false, plaintiff, Jorgenson and Riley were criminally charged on April 30, 2015 with aggravated assault, disorderly conduct, attempted assault and harassment, regarding the incident at the Dimmick Inn.

On November 4, 2015, a preliminary hearing was held regarding the charges filed against plaintiff, Jorgenson and Riley. Plaintiff alleges that Ashmawy falsely testified that he and the other men assaulted him. Based on Ashmawy's testimony, the criminal charges against all three men were held over for trial.

Also, on November 4, 2015, plaintiff reported to MPD and was escorted by DaSilva to be processed. Plaintiff was then processed and "booked" by the MPD. DaSilva ordered officer Bierle to ensure that plaintiff remained present to be processed. Plaintiff was in the custody and/or control of an MPD officer at all times and was not free to leave the police department.

On September 9, 2016, Jorgenson and Riley pleaded *nolo contendre* to one of the criminal charges Bierle filed against them, namely disorderly conduct engage in fighting, regarding the incident at the Inn. *See* Pike County Court criminal dockets in *Com. of PA v. Jorgenson*, Docket No. CP-52-CR-0000608-2015 and *Com. of PA v. Riley*, Docket No.CP-52-CR-0000609-2015.[2]

On September 9, 2016, the Pike County District Attorney's Office agreed to *nolle pros* the charges against plaintiff and they were dismissed. No conditions were placed on plaintiff in exchange for *nolle prossing* the charges. On October 20, 2016, the criminal charges filed against plaintiff and his arrest were expunged. As such, there is no Pike County Court criminal docket available regarding the criminal case filed against plaintiff.

As a result of the criminal charges, plaintiff alleges that he was suspended without pay from his federal employment, that he lost his health

---

[2]The court notes that the Pike County Criminal Dockets for Jorgenson and Riley can be found at http://ujsportal.pacourts.us. The court can take judicial notice of the Pike County Court Criminal Dockets for purposes of defendants' instant motion as an official state court record and matters of public record. *See* Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)(In considering a Rule 12 motion, the court may consider documents "that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.")(citations omitted).

insurance and, that during his suspension, he was prohibited by his federal agency from obtaining outside employment unless it was pre-authorized by the agency.[3] Plaintiff also alleged that he suffered monetary damages, including penalties and taxes by withdrawing money from his federal retirement account in order to defend himself against the false charges.

On September 15, 2017, plaintiff filed the instant civil rights action pursuant to 42 U.S.C. §1983 against defendants Milford Borough and DaSilva and, under Bivens[4] pursuant to 28 U.S.C. §1331 against Ashmawy. (Doc. 1). Plaintiff then filed an amended complaint on November 2, 2017, in response to a motion to dismiss filed by the Borough defendants. (Doc. 14). Plaintiff does not indicate if he sues defendants DaSilva and Ashmawy in both their official and individual capacities. Plaintiff alleges that his Fourth, Fifth and Fourteenth Amendment rights were violated by the defendants.

Specifically, in Count I, plaintiff asserts a malicious prosecution claim against Ashmawy under Bivens and, in Count II, he asserts a state law malicious prosecution claim against Ashmawy. In Count III, plaintiff asserts an abuse of process claim against Ashmawy under Bivens and, in Count IV, plaintiff asserts a state law abuse of process claim against Ashmawy. In

---

[3]Plaintiff alleges that subsequently he was terminated from his federal employment (i.e., with the TSA).

[4]Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

Count V, plaintiff asserts a malicious prosecution claim, based on municipal liability, against the Milford Borough and Chief DaSilva, as a decisionmaker, under §1983. Finally, in Count VI, plaintiff asserts a malicious prosecution claim against DaSilva under §1983.

As relief, plaintiff requests compensatory damages against all three defendants and punitive damages only against the two individual defendants, as well as a declaratory judgment that defendants' alleged acts "have violated and continue to violate [his] rights." Plaintiff also requests attorney's fees, pursuant to 42 U.S.C. §1988, and costs.

Pending is the motion to dismiss Counts V and VI of plaintiff's amended complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) filed jointly by the Milford Borough and DaSilva, (Doc. 16), on November 16, 2017. Defendants simultaneously filed their brief in support. (Doc. 17). Plaintiff filed his brief in opposition to defendants' motion on November 30, 2017. (Doc. 20). On December 14, 2017, defendants filed a reply brief. (Doc. 24). Defendants' Rule 12(b)(6) motion is ripe for disposition.

Also pending is the Rule 12(b)(6) motion of Ashmawy, (Doc. 18), which shall be addressed in a separate Memorandum.

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff avers violations of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution. The court can exercise supplemental jurisdiction over plaintiff's

state law claims under 28 U.S.C. §1367. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

## II.   STANDARDS OF REVIEW

### A.   *Motion to Dismiss*

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (*quoting* Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.,* Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified

only on the grounds of bad faith, undue delay, prejudice, or futility." <u>Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004)</u>.

### B. Section 1983

The Borough and the police chief are state actors for purpose of §1983. *See* Burke v. Twp. of Cheltenham, 742 F.Supp.2d 660 (E.D.Pa. Oct. 2010).

To state a claim under section 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>West v. Atkins, 487 U.S. 42 (1988)</u>; <u>Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)</u>. If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, <u>Polk Cnty. v. Dodson, 454 U.S. 312, 315 (1981)</u>, and there is no need to determine whether a federal right has been violated. <u>Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)</u>.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." <u>Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988)</u>. *See also* <u>Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)</u>(citing *Rode*). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode, 845 F.2d at 1207</u>.

Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997);

Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained

in *Rode*:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . . [P]ersonal
> involvement can be shown through allegations of
> personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual
> knowledge and acquiescence, however, must be
> made with appropriate particularity.

Rode, 845 F.2d at 1207.

With respect to punitive damages for a §1983 violation, this remedy is

only available "when the defendant's conduct is shown to be motivated by evil

motive or intent, or when it involves reckless or callous indifference to the

federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983).

Regarding federal civil rights claims, "reckless indifference" refers to the

defendant's knowledge of the illegality of his actions, not the egregiousness

of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing

Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).


## III.   DISCUSSION

### A.   *Official Capacity*

Plaintiff appears to assert his claims in Counts V and VI against Chief

DaSilva in his official capacity in addition to his individual capacity. "[O]fficial

capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018,(1978), and "a court should treat such suits against public officers as if they were brought against the governmental entities for which they work." Burke v. Twp. of Cheltenham, 742 F.Supp.2d 660, 668 (E.D.Pa. 2010) (citing Mitros v. Cooke, 170 F.Supp.2d 504, 506 (E.D.Pa. 2001)). *See also* Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) (Section 1983 suits against individuals in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted); Swedron v. Borough, 2008 WL 5051399, *4 (W.D. Pa. Nov. 21, 2008) (Court held that official capacity claims under §1983 against defendant police officers should be dismissed since they were redundant of the claims against defendant Borough) (citing Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988)); Brice v. City of York, 528 F.Supp.2d 504, 516 n. 19 (M.D. Pa. 2007) ("claims against state officials in their official capacities merge as a matter of law with the municipality that employs them."). The malicious prosecution claims plaintiff asserts against DaSilva, to the extent that he is sued in his official capacity, are essentially based on the same allegations as the malicious prosecution claim asserted against the Borough, and there is no reason to keep these claims against DaSilva in his official capacity since they are redundant of the claim against the Borough.

Thus, the court will dismiss Counts V and VI alleging malicious

prosecution claims with respect to DaSilva to the extent these claims are against him in his official capacity. Plaintiff can only sue DaSilva in his individual/personal capacity.

## B. Declaratory Judgment

Plaintiff seeks declaratory judgment that defendants' alleged acts "have violated and continue to violate [his] rights." Defendants argue that plaintiff's requests for declaratory judgment in Counts V and VI should be dismissed.

Defendants contend that declaratory judgment is not meant to adjudicate alleged past unlawful activity. There is no question that plaintiff can request declaratory relief to remedy alleged ongoing violations of his constitutional rights. *See* <u>Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009)</u>(Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future)(citations omitted). However, plaintiff is not entitled to declaratory relief that defendants violated his rights in the past as he alleges. Id. (citing Brown v. Fauver, 819 F.2d 395, 399-400 (3d Cir. 1987)(Third Circuit directed district court to dismiss plaintiff's §1983 claim for prospective relief where he "has done nothing more than allege past exposure to unconstitutional state action"). In this case, plaintiff fails to allege any ongoing violations of his constitutional rights. Plaintiff also fails to allege that there is a substantial likelihood that he will suffer injury in the future if the court does not issue declaratory judgment. Rather, plaintiff's criminal

14

proceedings ended in 2016 and all of the unlawful conduct he attributes to defendants occurred in the past.

Thus, plaintiff's requests for declaratory judgment fail as a matter of law and will be dismissed with prejudice from his amended complaint.

### C. **Fourteenth Amendment Claims**

Defendants argue that since plaintiff's claims for malicious prosecution alleging his arrest was unconstitutional and that he was unlawfully deprived of his liberty due to the criminal proceedings initiated without probable cause fall under the Fourth Amendment, he cannot also bring these claims under the Fourteenth Amendment. Thus, defendants move to dismiss plaintiff's claims insofar as plaintiff asserts they also fall under the Fourteenth Amendment. Defendants cite to Albright v. Oliver, 510 U.S. 266 (1994), and Meketa v. Kamoie, 955 F.Supp.2d 345, 365 (M.D. Pa. 2013). In Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 813 (1994), the Court held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotation marks omitted); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260–61 (3d Cir. 2010).

In this case, there is no doubt that the Fourth Amendment governs a claim of malicious prosecution under §1983. See Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009). Thus, to support their contention, defendants rely

15

upon United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219 (1997), in which the Supreme Court held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Plaintiff does not assert separate substantive and procedural due process claims under the Fourteenth Amendment in his amended complaint. Thus, while the Supreme Court developed the more-specific provision rule which would bar any due process claims of plaintiff in this case, plaintiff appears to reference the Fourteenth Amendment for purposes of the incorporation doctrine. "Under the incorporation doctrine, the Fourth Amendment and other provisions of the Bill of Rights apply on their face only to the federal government, and were incorporated against the states later by operation of the Fourteenth Amendment's Due Process Clause." Williams v. Papi, 30 F.Supp.3d 306, 312 (M.D.Pa. 2014) (citing Terry v. Ohio, 392 U.S. 1, 8, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968) (describing "the Fourth Amendment, made applicable to the States by the Fourteenth"). As such, since plaintiff brought his claim under the Fourth Amendment for the actions of a police officer employed by a Pennsylvania municipality as well as the municipality, he was required to also invoke the Fourteenth Amendment to make his claims cognizable. Thus, plaintiff was required to allege that his claims against the state actor and the Borough were under both the Fourth Amendment as well as under the

16

Fourteenth Amendment. *Id.*

The court finds that plaintiff does not have independent claims for malicious prosecution under the Fourteenth Amendment. Therefore, defendants' motion to dismiss plaintiff's claims, insofar as he asserts they also fall under the Fourteenth Amendment regarding the two Borough defendants for purposes of the incorporation doctrine, will be denied.[5] See Burke, 742 F.Supp.2d at 671.

### D.    *Fifth Amendment Claims*

Plaintiff also alleges that his rights under the Fifth Amendment were violated by the defendants. To the extent plaintiff raises his claims against the two Borough defendants under the Fifth Amendment, they will be dismissed since they are not a federal official and agency. *See* Wilson v. City of Cherry Hill, 2011 WL 3651274, *7 (D.N.J. Aug. 18, 2011) (citing In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 488 (E.D.Pa. 2005) ("The Fifth Amendment's Due Process Clause applies to the federal government"); Postie v. Frederick, 2015 WL 1219263, *4 (M.D.Pa. March 17, 2015) (This court dismissed plaintiff's Fifth Amendment claim since there was no alleged involvement by a federal actor.).

---

[5]The Fourteenth Amendment does not apply to plaintiff's claims against Ashmawy since plaintiff alleges that he is a federal officer. *See* Wilson v. City of Cherry Hill, 2011 WL 3651274, *7 (D.N.J. Aug. 18, 2011) (court held that the Fourteenth Amendment due process claims "are appropriate only when brought against state actors") (citations omitted).

Thus, plaintiff's malicious prosecution claims against the two Borough defendants pursuant to the Fifth Amendment will be dismissed with prejudice.

### E. Malicious Prosecution Claim, Count VI

It is well-settled that "[t]o prove malicious prosecution [under §1983 when the claim is under the Fourth Amendment] ... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009); Piazza v. Lakkis, 2012 WL 2007112, *7 (M.D.Pa. June 5, 2012) (citation omitted). "[A] claim for malicious prosecution 'permits damages for confinement imposed pursuant to legal process.'" Piazza v. Lakkis, 2012 WL 2007112, *8 (citations omitted). Further, "a claim for malicious prosecution seeks to remedy 'the deprivation of liberty accompanying prosecution, not prosecution itself.'" Id. (citations omitted). In order for plaintiff to prevail on his malicious prosecution claim under §1983, he must satisfy each of the above stated elements. Kossler v. Crisanti, 564 F.3d at 186; Ward v. Noonan, 147 F.Supp.3d 262, 281 (M.D.Pa. 2015) ("If Plaintiffs have not proffered evidence sufficient to create a triable issue of fact as to all five prongs, their malicious prosecution claim must fail

18

as a matter of law.") (citations omitted).

In Washington v. Hanshaw, 552 Fed.Appx. 169, 173 (3d Cir. 2014), the Third Circuit stated that "our precedents are clear that §1983 plaintiffs alleging arrest and prosecution absent probable cause may bring malicious prosecution claims under the Fourth Amendment, but are entitled to relief only if they are innocent of the crime for which they were prosecuted." (citing Hector v. Watt, 253 F.3d 154, 156 (3d Cir. 2000)). As such, plaintiff "must prove *actual* innocence as an element of his *prima facie* case" regarding his malicious prosecution claims. Steele v. City of Erie, 113 Fed.Appx. 456, 459 (3d Cir. 2004) (citing Hector v. Watt, 235 F.3d at 156).

Initially, there is no dispute that all of the charges filed against plaintiff were *nolle prossed* at the time his case was scheduled for trial. The Third Circuit has held that the *nolle prossing* of criminal charges only satisfies the favorable termination requirement if the record indicates the reason for the *nolle pros.* DiFronzo v. Chiovero, 406 Fed.Appx. 605, 608-09 (3d Cir. 2011). Specifically, the Third Circuit stated that "[a] nol pros signifies termination of charges in favor of the accused 'only when their final disposition is such as to indicate the innocence of the accused.'" Id. at 609 (quoting Donahue, 280 F.3d 371, 383 (3d Cir. 2002). "Accordingly, in Hector v. Watt, 235 F.3d at 156, we stated that a §1983 malicious prosecution plaintiff 'must be innocent of the crime charged in the underlying prosecution.'" Id. (citing Donahue, 280 F.3d at 383).

At this stage of the case, there is not yet evidence in the record regarding why the District Attorney *nolle prossed* the criminal charges filed against plaintiff. In order to establish the favorable termination element, plaintiff will be required to submit evidence indicating that he was innocent of the charges and to show that "the circumstances-both the offenses as stated in the statute and the underlying facts of the case-indicate that the judgment as a whole" reflects his innocence of the stated charges. *See* <u>Kossler v. Crisanti, 564 F.3d at 188</u>. Therefore, it is premature to determine whether the *nolle pros* of the criminal charges satisfies the favorable termination requirement of plaintiff's malicious prosecution claims and whether the *nolle pros* of the charges is evidence of a lack of probable cause to file the charges.

The gravamen of defendants argument seeking dismissal of plaintiff's malicious prosecution claims is that there was sufficient probable cause to arrest plaintiff and to commence criminal proceedings against him based on his own allegations in his amended complaint. Defendants state that "[t]he existence of probable cause at the time of arrest defeats any federal or state claim for malicious prosecution."

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." <u>U.S. Const. amend. IV</u>. "An arrest is lawful under the Fourth Amendment only if it is supported by probable cause." <u>Clifton v. Borough of Eddystone, 824 F.Supp.2d at 623</u> (citing <u>Johnson v. Campbell, 332 F.3d at</u>

211). "Probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense." Watson v. Witmer, 183 F.Supp.3d 607, 613 (M.D.Pa. 2016) (citation omitted). The dispositive issue is not whether plaintiff actually committed the offenses but whether DaSilva had probable cause to believe plaintiff committed the offenses at the time he arrested plaintiff. *See* Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).

Additionally, the court in Clifton, 824 F.Supp.2d at 623-24, addressed when probable cause exists and stated:

> Probable cause is present where an officer has a sufficient basis to make a "practical, common sense" decision that a "fair probability" of criminal activity exists. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The inquiry is whether "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *[Michigan v.] DeFillippo,* 443 U.S. [31] at 37, 99 S.Ct. 2627 [1979]. If the arrest was effected without probable cause, it would violate Plaintiff's Fourth Amendment protection against unreasonable seizures.

Under the Fourth Amendment, the test of reasonableness "is whether under the totality of the circumstances, the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

Defendants state that even if plaintiff's allegations are accepted as true, they had probable cause to arrest plaintiff based on the information Ashmawy provided to DaSilva, namely, his statement that plaintiff and the other men assaulted him and caused him physical injuries, and his Affidavit of Probable Cause in which he averred that he was assaulted by plaintiff and the other men. Defendants further point to the fact that Ashmawy testified at the preliminary hearing against plaintiff and that the Magisterial District Judge bound over the charges against plaintiff and the two other men for trial. Defendants also state that the conduct to which plaintiff admitted in his pleading show that there was probable cause to arrest him, i.e., he, along with Jorgenson and another person, physically pulled Ashmawy away and, that he was able to take Ashmawy outside away from the scene. Defendants contend plaintiff's admission that he made physical contact with Ashmawy by pulling him and taking him outside provided sufficient probable cause to file the charges against him for harassment, disorderly conduct and engaging in fighting based on the definitions of those crimes.

No doubt that in order for plaintiff to prevail on his Fourth Amendment claims, he must show a lack of probable cause for his arrest and his subsequent criminal prosecution. Plaintiff has essentially alleged that DaSilva knowingly, deliberately, or with reckless disregard for the truth omitted material information from his Affidavit and, that if DaSilva did include the information, it would have demonstrated that there was not sufficient probable

cause to arrest and prosecute him. In Wilson v. Russo, 212 F.3d 781, 787 (3d Cir. 2000), the Third Circuit stated that "a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." The court in Wilson, id. at 788, held that "omissions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" (citation omitted). The court can consider whether "the omission [by the officer] occurred at least with reckless disregard of its effect upon the affidavit." Further, "[a]n assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Id. (citation omitted).

Defendants fail to acknowledge that plaintiff alleged DaSilva knew Ashmawy's allegations about the assault by him were false. Defendants also ignore plaintiff's allegations that DaSilva knowingly or in reckless disregard failed to consider and include in his Affidavit material exculpatory evidence showing that plaintiff did not assault Ashmawy, such as the statements of witnesses as well as the photos allegedly showing the injuries Ashmawy caused to Jorgenson's wife by his assault on her. According to plaintiff, he was required to act for the protection of the women in the Inn, including Jorgenson's wife and Christina Floyd, who were being harassed and

23

physically assaulted by a visibly intoxicated Ashmawy. Defendants also fail to account for plaintiff's allegations that DaSilva initially decided no criminal charges were warranted against plaintiff but that he ultimately was coerced and forced to file the charges based on Ashmawy's repeated threats and on his position with Congress. Plaintiff also points out that the charge of harassment under 18 Pa.C.S.A. §2709(a) requires intent, and that a charge of disorderly conduct under 18 Pa.C.S.A. §5503, provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ...." Plaintiff has averred in his pleading that he did not have the requisite intent with respect to either charge.

In short, plaintiff alleges that DaSilva knew at the time of his arrest that probable cause was lacking based on the stated alleged evidence exonerating plaintiff of any criminal conduct, that he intentionally omitted including any exculpatory evidence from his Affidavit and, that any reasonable person would have known that the judge would want to know such evidence. "Probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense." Watson, 183 F.supp.3d at 613 (citations omitted). Based on the facts alleged by plaintiff, it is plausible that a reasonable person would be convinced that plaintiff did not commit the charged offenses.

Accepting plaintiff's allegations as true, the court finds that plaintiff has

24

adequately alleged that DaSilva did not have probable cause to arrest him and initiate criminal proceedings against him. Further, as detailed above, plaintiff has plead sufficient facts to show DaSilva's personal involvement with his malicious prosecution claims regardless of whether DaSilva actually filed the criminal charges against plaintiff or ordered another officer to file the charges. See Sutton v. Rasheed, 323 F.3d at 249-250 (Court held that a plaintiff in a §1983 civil rights action must show that each defendant was personally involved with the alleged violation of his constitutional rights.). Through discovery, the parties will be able to more fully develop the record as to the extent of DaSilva's involvement with the alleged violation of plaintiff's constitutional rights.

Moreover, defendants argue in their reply brief, (Doc. 24), that the exhibits submitted by Ashmawy to support his motion to dismiss, (Doc. 18-2), including the statements from people interviewed by the police indicating, in part, that three men attacked Ashmawy and that one of the men then dragged Ashmawy outside, and that Ashmawy was bleeding and his left eye was swollen, show that a thorough investigation was made before the charges were filed against plaintiff. Even though Ashmawy allegedly was assaulted and sustained injuries, plaintiff stated that he did not cause the injuries and that no witness saw him assault Ashmawy. At this stage of the case, for purposes of a motion to dismiss, the court will not consider this evidence submitted by Ashmawy outside of plaintiff's pleading. The parties will be able

to conduct discovery regarding the stated evidence, in addition to all of the other evidence, and to then file summary judgment motions if appropriate.

Thus, the court finds that a dispositive determination of whether probable cause existed to file charges and initiate criminal proceedings against plaintiff is premature at this stage of the case. *See Watson, supra.* Thus, the court will deny defendants' motion to dismiss the malicious prosecution claims against DaSilva.

### F. *Malicious Prosecution Claim Under Monell, Count V*

Defendants argue that plaintiff fails to state a viable claim against Milford Borough based on *Monell.* Since plaintiff names the Borough as a defendant and alleges that it violated his constitutional rights, the standards annunciated in Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978), apply to his claim against it. *See* Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d 516, 524 (M.D.Pa. 2013). A municipality is a "person" for purposes of §1983. *See* Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of *respondeat superior.* Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id. "Municipal liability only attaches when a

26

plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d at 524; Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014) ("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation.") (citation omitted). The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id.

A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 249–50 (3d Cir. 2007) (citation omitted).

27

Thus, plaintiff must allege that the Borough unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of his constitutional rights. Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014).

In Count V, plaintiff's amended complaint includes both the Borough and its Police Chief, DaSilva, "who most certainly constitutes a municipal 'decisionmaker' under *Monell*." Burke, 742 F.Supp.2d at 672 (citing Monell, 436 U.S. at 658-59 ("characterizing the police chief as a municipal decisionmaker")). In Count V, (Doc. 14 at 12), plaintiff alleges as follows:

79. The Borough of Milford created a policy and/or custom of instituting criminal actions without probable cause, wherein Defendant DaSilva and/or others in the MPD were permitted to do so with impunity and with tacit approval of the Borough of Milford, with deliberate indifference to Plaintiff's constitutional rights.
80. Further, the Borough of Milford has established a policy and/or custom whereby Chief DaSilva was not properly supervised as Chief of Police and permitted to violate the constitutional rights of private individuals with impunity and with deliberate indifference to Plaintiff's constitutional rights.
81. The above policies and/or customs were created and maintained by a policymaker with final policymaking authority and/or Chief DaSilva, and said policies and/or customs were ratified and/or condoned by the Borough.
82. Further, Chief DaSilva and/or a policymaker with final policymaking authority adopted the above policies and customs.
83. The criminal proceedings were terminated in favor of Plaintiff.
84. Defendant DaSilva and the MPD knew that the criminal charges against Plaintiff were unwarranted.

Plaintiff argues that he has alleged the MPD, through its policymaker, created a policy and/or custom of instituting criminal actions without probable cause, and DaSilva, and the MPD knew that the criminal charges against him

28

were unwarranted. He further alleged that as a result of this policy, DaSilva, with deliberate indifference to his constitutional rights, directly caused him harm.

In Burke, 742 F.Supp.2d at 673, the court explained:

In Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), the Court clarified: "it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Under this test, "proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." Id. at 405, 117 S.Ct. 1382.

Defendants' first contention is that since plaintiff's pleading shows DaSilva had probable cause to arrest and institute criminal charges against plaintiff, the Borough cannot be liable for malicious prosecution. However, as discussed, the court has found that the malicious prosecution claim against DaSilva will proceed.

Defendants also assert that plaintiff's allegations are vague, conclusory, and generally pled, and thus insufficient to establish a Monell claim against the Borough. The court finds that plaintiff has sufficiently stated a cognizable claim against the Borough and DaSilva under Monell, and Defendants' motion to dismiss Count V will be denied.

### G.    Qualified Immunity

Finally, defendants assert that even if plaintiff's constitutional rights were violated, DaSilva is entitled to the affirmative defense of qualified immunity.

"[L]aw enforcement officers acting within their professional capacity are generally immune from trial 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (citation omitted). Thus, "[a] state official with qualified immunity has no civil liability for discretionary conduct so long as he does 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Clifton v. Borough of Eddystone, 824 F.Supp.2d at 622 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

To determine if DaSilva has qualified immunity, a two-part inquiry is required: "The Court must determine whether the plaintiff has shown facts that make out a constitutional rights violation and if so, whether those rights were 'clearly established' at the time of the incident. *Id.* (citing Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).*See also* Perez v. Borough of Berwick, 507 Fed.Appx. 186, 192 (3d Cir. 2012) ("To determine

30

whether the individual officers are entitled to qualified immunity, the District Court [is] required to consider whether, under the factual scenario of this case, the officers were reasonable to believe that their actions did not violate the [plaintiff's] clearly established rights."). The relevant inquiry in deciding whether a right was clearly established "is whether a reasonable officer could have believed that his or her conduct was lawful in light of the clearly established law and the information in the officer's possession." Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997). "A law enforcement officer is entitled to qualified immunity if it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Gilles v. Davis, 427 F.3d 197, 203–04 (3d Cir. 2005).

At the present pleading stage of this case, and based on the above discussion, it is premature to determine if DaSilva had sufficient probable cause to arrest and charge plaintiff and, it is premature to determine if DaSilva is entitled to qualified immunity. In general, "the existence of probable cause is a factual issue." Groman v. Township of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995) (citation omitted). In Williams v. Papi, 30 F.Supp.3d at 314, the court stated that, "[t]he Third Circuit has cautioned that 'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases'") (quoting Newland v. Reehorst, 328 F.App'x. 788, 791 n. 3 (3d Cir. 2009)).

As in the Williams case, the court finds that "a determination of qualified

31

immunity is inappropriate at the pleading stage" in the present case. *Id.* As discussed above, plaintiff has stated cognizable constitutional claims for malicious prosecution under the Fourth Amendment as against DaSilva. In viewing the facts in the amended complaint in the light most favorable to the plaintiff, it is alleged that DaSilva violated plaintiff's constitutional rights by knowingly relying upon false evidence in the Affidavit of Probable Cause used to support plaintiff's arrest and criminal prosecution that resulted in a termination favorable to plaintiff. Further, the rights under the Fourth Amendment were sufficiently clear that DaSilva should have known that criminal charges and prosecution based on evidence he knew to be false violated those rights. Additionally, the right to be free from the initiation of criminal proceedings against a person without probable cause was clearly established at the time of plaintiff's arrest. *See* Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).

Thus, when viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, the court does not find at this stage of the case that qualified immunity exists as a matter of law. *Id.* After discovery is conducted by the parties and the factual record is fully developed, DaSilva can re-assert the qualified immunity defense in a summary judgment motion if appropriate. *See* Kopec, 361 F.3d at 777 ("defendant[] can still win on summary judgment if the district court concludes, after resolving all factual

32

disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.") (citations omitted).

## V.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss, (Doc. 16), plaintiff's amended complaint, (Doc. 14), is **GRANTED IN PART** and **DENIED IN PART**.

The plaintiff's claims against DaSilva in his official capacity are **DISMISSED WITH PREJUDICE**. DaSilva however can be sued by plaintiff under §1983 in his individual capacity. Defendants' motion to dismiss is **GRANTED** with respect plaintiff's requests for declaratory judgment and these claims for relief are **DISMISSED WITH PREJUDICE**. Defendants' motion to dismiss plaintiff's claims, insofar as he asserts they also fall under the Fourteenth Amendment regarding the two Borough defendants, is **DENIED**. Plaintiff's malicious prosecution claims against the two Borough defendants pursuant to the Fifth Amendment are **DISMISSED WITH PREJUDICE**. Defendants' motion to dismiss the malicious prosecution claim against DaSilva in Count VI is **DENIED** and this claim will **PROCEED** against him. Defendants' motion to dismiss the malicious prosecution claim against the Borough and DaSilva under *Monell* in Count V is **DENIED** and this claim will **PROCEED** against them. Defendants' motion to dismiss DaSilva based on the qualified immunity defense is **DENIED**.

A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: April 5, 2018**